IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

PENNY ROGERS                                                                                    PLAINTIFF

V.                          Civil No. 2:18-cv-02132-PKH-MEF

ANDREW M. SAUL[1], Commissioner,
Social Security Administration                                                       DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Penny Rogers, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration ("Commissioner") denying her claim for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") benefits under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. 42 U.S.C. § 405(g).

### I.   BACKGROUND

This case has a lengthy procedural history. Plaintiff protectively filed her application for DIB on October 27, 2009, alleging an onset date of October 1, 2008, due to bulging disks in the spine. (ECF No. 12, pp. 226-229). Her application was denied at both the initial and reconsideration levels. An initial administrative hearing was held on her DIB claim on September 9, 2010, resulting in an unfavorable decision by Administrative Law Judge Edward

---

[1] Andrew M. Saul became the Commissioner of the Social Security Administration on June 17, 2019, and he is substituted as Defendant in this action pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

Starr on November 22, 2010. (*Id*. at 72-100, 106-113). She subsequently filed an application for SSI benefits on November 3, 2011, alleging the same onset date and grounds for disability.

Plaintiff appealed the unfavorable DIB decision to the Appeals Council, and the case was remanded on May 25, 2012. (*Id*. at 118-121).

A second administrative hearing was held on September 19, 2012, resulting in an unfavorable decision by Administrative Law Judge Bill Jones on March 6, 2013, denying Plaintiff's claims under both applications. (*Id*. at 43-71, 19-36). On appeal to this Court, the case was remanded to the Commissioner for further consideration on June 1, 2015. (*Id*. at 749-755). The ALJ was directed to properly consider the opinion of Plaintiff's treating physician, Dr. Piechal.

Judge Jones held a third administrative hearing on January 6, 2016, which also resulted in the entry of an unfavorable administrative decision on April 26, 2016. (*Id*. at 688-713, 660-680). On January 27, 2017, pursuant to the Defendant's Motion to Remand, this Court remanded the case a second time. On July 17, 2017, Judge Starr held a fourth, and final, administrative hearing, at which time the Plaintiff was present and represented by counsel. (*Id*. at 1230-1247).

Plaintiff was between 27 and 36 years of age during the time period relevant to the applications filed in this case. Further, she possessed a high school education with past relevant work ("PRW") experience as a cable machine operator/standing machine operator, appliance assembler, waitress, and phlebotomist.

On April 2, 2018, Judge Starr concluded Plaintiff's back impairment, obesity, dysthymia, and personality disorder with borderline and histrionic traits were severe but did

not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. (*Id*. at 1183-1206). He found Plaintiff capable of performing a full range of sedentary work with the use of a cane to ambulate, but determined she was limited to simple, routine, and repetitive tasks, involving only simple, work-related decisions with few, if any, workplace changes, and no more than interpersonal contact with supervisors and the general public. With the assistance of a vocational expert, the ALJ determined Plaintiff could perform work as a document preparer, copy examiner, and printed circuit board layout checker.

Plaintiff then filed this action on July 31, 2018. (ECF No. 1). The matter is before the undersigned for report and recommendation. Both parties have filed appeal briefs (ECF Nos. 15, 16), and the case is ready for decision.

## II. APPLICABLE LAW

This Court's role is to determine whether substantial evidence supports the Commissioner's findings. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than a preponderance, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Teague v. Astrue*, 638 F.3d 611, 614 (8th Cir. 2011). We must affirm the ALJ's decision if the record contains substantial evidence to support it. *Blackburn v. Colvin,* 761 F.3d 853, 858 (8th Cir. 2014). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the

3

record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision. *Id.*

A claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Only if he reaches the final stage does the fact finder consider the Plaintiff's age, education, and work experience in light of her residual functional capacity. *McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982), *abrogated on other grounds by Higgins v. Apfel*, 222 F.3d 504, 505 (8th Cir. 2000); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

4

### III. DISCUSSION

Plaintiff raises two issues on appeal: (1) whether the ALJ's RFC finding is supported by substantial evidence, and (2) whether the ALJ's step five conclusion is erroneous. The Court does not reach the second issue because we find the ALJ's RFC determination is not supported by substantial evidence.

RFC is the most a person can do despite that person's limitations. 20 C.F.R. §§ 404.1545, 416.945. A disability claimant has the burden of establishing his or her RFC. *Vossen v. Astrue*, 612 F. 3d at 1016. "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010); *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Miller v. Colvin*, 784 F.3d at 479 (citing *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012).

Plaintiff contends she is unable to perform sedentary work due to her back impairment. By its definition, sedentary work requires sitting for approximately six hours per day. SOCIAL SECURITY RULING (SSR) 83-10. The record makes clear she suffers from a significant back impairment. Neurosurgeon, Dr. James Standefer, treated Plaintiff on October 16, 2008, for

complaints of focal back and left lower quadrant pain. (ECF No. 12 at 392-93). An MRI of her lumbar spine dated August 2008 had shown a right paracentral disc herniation at the L3-4 level with facet hypertrophy from the L3 through the S1 levels. (*Id*. at 413, 415, 417, 481-82, 514-15, 1461). Plaintiff's abdomen was slightly tender on exam, and she had normal muscle strength and tone in her extremities. Dr. Standefer prescribed epidural steroid injections, Lorcet, and physical therapy.

On October 20, 2008, an MRI of her thoracic spine revealed disc protrusion and extrusion at the T7-8 level with disc space narrowing at the T6-7 and T7-8 levels. (*Id.* at 412, 422-23, 457, 487-88, 506-07, 1462-63).

On December 15, 2008, Plaintiff's treating physician, Dr. Robert Baker, noted muscle spasm and a decreased range of motion on exam and prescribed Percocet and Mobic for a diagnosis of degenerative disk disease ("DDD"). (*Id*. at 403).

In April 2009, she began treatment at Cornerstone Family Clinic. On May 15, the doctor prescribed Oxycodone for pain radiating down both legs and resulting in both bowel and bladder dysfunction. (*Id*. at 432-33, 447-60). Exams revealed positive straight leg raise tests and bilateral tenderness.

In August 2009, Plaintiff began receiving pain management services at the Wellness Center of Roland ("WCR"). (*Id*. at 446-474). She reported severe back pain and an inability to move her bowels and hold her bladder. Among the medications prescribed were Valium, Lexapro, MS Contin, Imitrex, Xanax, and Zanaflex.

A second MRI of her lumbar spine completed on September 22, 2009, showed a disc herniation and an annular tear at the L3-4 level, facet hypertrophy from the L3 to S1 levels, a

small hemangioma at the L2 level, and a possible pars interarticularis defect at the L5 level. (*Id*. at 420-21, 440-43, 493-94, 504-05, 1468-69). Plaintiff continued pain management at WCR, reporting the inability to hold her bladder. (*Id*. at 447-50, 459-74). She was routinely given refills of Roxicodone, Morphine, and Valium.

On May 21, 2010, another MRI of her lumbar spine revealed a right paracentral disc protrusion and disk degeneration at the L3-4 level with minimal disc degeneration at the L5-S1 level. (*Id*. at 495, 498-99, 1470).

On June 24, 2010, Dr. Michael Kemp treated Plaintiff for complaints of severe back and left-sided pelvic pain. (*Id*. at 528-29). She returned in July with reports of increased back pain, numbness in her left arm and fingers, and fainting spells. (*Id*. at 532-33). Finding no evidence of neurological deficits or cardiac arrhythmias, Dr. Kemp diagnosed syncopal episodes of uncertain etiology and increased her Effexor dosage.

On August 25, 2010, Plaintiff began treatment with pain specialist, Dr. William Piechal, for lumbosacral pain radiating down both legs – left side greater than the right. The pain interfered with her activities of daily living, including her ability to care for her child. (*Id*. at 545-46, 597-98). An exam revealed a slight decrease in sensation in the S1 distribution of her left foot and some enthesopathic changes in her lower back with a decreased range of motion and decreased rotation in side-bending to the right. Dr. Piechal diagnosed lumbosacral intradiscal pathology with chronic low back pain, lumbosacral enthesopathy, left hip enthesopathy, and chronic benign intractable pain syndrome secondary to the above disorders. He administered an injection of pain medication; performed gentle articulatory technique; and, prescribed Morphine, Chantix, Oxycodone, BuSpar, and Hydroxyzine. (*Id*. at 546).

Thereafter, she saw Dr. Piechal regularly for pain management through at least July 2013. (*Id.* at 599-631, 888-926). He often administered trigger point injections or performed osteopathic manipulation and consistently observed a restricted range of motion, limited movement, muscular deconditioning, focal trigger point tenderness, palpable taut muscle bands, and reproducible pain with stimulation of trigger points in her back. At times, he also observed pitting edema.

On February 23, 2011, Dr. Piechal assessed Plaintiff's physical functioning. (*Id.* at 542-44). He concluded she could sit for 3 hours per day; stand for 1 hour per day; walk for 45 minutes per day for a total of 4½ hours per day; occasionally lift and carry up to 10 pounds; reach, bend, kneel, balance, twist, and climb stairs and ramps; rarely work overhead, squat, stoop, crouch, and climb ladders; and, she would need hourly rest breaks. He also assessed marked limitations working near unprotected heights and dangerous machinery, indicating that his restrictions were based on Plaintiff's MRI results.

When she saw Dr. Kemp again on December 22, 2011, Plaintiff reported that pain management and injections were helping her back pain. (*Id.* at 555-58). However, she continued to experience urinary incontinence and difficulty functioning due to anxiety, which was aggravated by her chronic pain. An exam revealed an anxious affect and percussion at the T11 and L5 levels but was otherwise normal. Dr. Kemp prescribed Oxybutynin for urinary incontinence, as well as Alprazolam and Clonazepam for anxiety.

By April 25, 2012, Plaintiff indicated her medication was no longer helpful. And, her mother reported she alternated between sleeping for long periods of time and going for long periods without sleep. (*Id.* at 563-69). Plaintiff also claimed that her medication had been

8

stolen from her car. Dr. Kemp encouraged her to file a police report so she could obtain refills, but she was afraid to do so because she feared the undercover police were "out to get" her. Dr. Kemp diagnosed depression with anxiety, chronic back pain, withdrawal symptoms, and fatigue/malaise. (*Id.* at 563, 568).

Plaintiff saw Dr. Baker again on May 8, 2012, after stopping her pain and anxiety medications. Her symptoms had gradually worsened, and she reported increased pain with certain positions and activities, such as bending. (*Id.* at 588-89). On exam, she exhibited a decreased range of motion, pain, and muscle spasms, but her mood and affect were normal. Dr. Baker diagnosed DDD, generalized anxiety disorder, endometriosis, and obesity. An MRI was ordered, and he prescribed Norco, Effexor, Depo-Provera, and Phendimetrazine Tartrate. (*Id.* at 589, 873-84).

An MRI of her lumbar spine on May 11, 2012 showed the previous disc protrusion at the L3-4 level with foraminal spurring and a new left paracentral disc protrusion at the L5-S1 level. (*Id.* at 549-50, 1474).

Plaintiff consulted with neurosurgeon, Dr. John Pulliam, on May 17, 2012, for chronic back and leg pain as well as swelling in her feet. She had stopped her pain management treatment because she did not want to take such strong medication. (*Id.* at 590-94). An exam revealed some tenderness in her back, some decreased sensation in the feet, absent ankle reflexes, and marked edema in her calves and feet. (*Id.* at 592). Dr. Pulliam found nothing of surgical significance and no pathology to explain her leg symptoms. However, she did have radiculitis, which he explained would not be visible on an MRI. Dr. Pulliam was not able to

9

offer her any treatment, but he advised her to continue pain management and to have her primary care physician evaluate her edema. (*Id.* at 593-94).

On October 15, 2012, Ted Honghiran, M.D. conducted a consultative orthopedic examination. Plaintiff had a hard time walking and had to use a cane; was unstable; needed help getting undressed and getting on and off the exam table; was unable to squat down; and, she exhibited a severely limited range of motion in her lumbar spine, a negative straight leg raise test, and normal sensation. (*Id.* at 637-45). Dr. Honghiran concluded that her chronic back pain was quite severe and disabling. Because her pain was excessive compared to the physical findings, he felt she should be evaluated by a psychiatrist. (*Id.* at 638). Dr. Honghiran opined she should never lift; could sit for 1 hour at a time and 4 hours total; could stand for 30 minutes at a time for a total of 2 hours; could walk for 15 minutes at a time and for a total of 2 hours; could occasionally reach, handle, and finger; and, she should never push or pull. He also indicated that use of a cane was medically necessary. (*Id.* at 639-43). Further, Dr. Honghiran opined Plaintiff could not shop, travel without a companion, ambulate without an assistive device, walk a block at a reasonable pace on rough or uneven surfaces, use standard public transportation, climb a few steps at a reasonable pace with the use of a single hand rail, prepare a simple meal and feed himself/herself, care for her personal hygiene, or sort, handle or use paper/files. (*Id*. at 644).

Plaintiff presented to the ER on August 22, 2015, with complaints of low back pain and leg swelling. (*Id.* at 983-91). She had moderate pain with range of motion in her back, swelling and tenderness in her left lower extremity, and mild difficulty walking necessitating the use of a cane. (*Id.* at 986). The doctor administered Lasix, Percocet, and Valium. (*Id.* at 988). Her

10

discharge diagnoses were chronic low back pain and chronic leg edema. The doctor prescribed Anaprox and Baclofen. (*Id.* at 989).

Plaintiff began seeing family practitioner, Dr. Vijay Kannam, on June 28, 2016, for complaints of migraines and back pain. He increased her Gabapentin dose, added Flexeril, recommended physical therapy, and referred her to pain management. (*Id.* at 1450-53, 1484-87). On July 21, Dr. Kannam prescribed a Medrol Dosepak Indomethacin, Gabapentin, and Flexeril. (*Id.* at 1446-50, 1480-83).

On August 11, 2016, Plaintiff indicated her back pain had slightly improved on Gabapentin and was awaiting a visit to a pain specialist. She also reported anxiety and panic attacks. (*Id.* at 1443-46, 1477-80).

Plaintiff returned to Dr. Kannam's office on September 21, 2016, with continued complaints of back pain. (*Id.* at 1439-43). An exam revealed an anxious affect and tenderness and muscle spasms in her lumbar area. The doctor prescribed Hydroxyzine for anxiety and Gabapentin, Flexeril, physical therapy, and pain management for her back pain. (*Id.* at 1442).

On March 3, 2017, Plaintiff reported foot pain as well as transportation and financial problems preventing her from seeing her pain specialist in Fayetteville. (*Id.* at 1435-39). She was anxious. Dr. Kannam prescribed Oxycodone-acetaminophen for pain and recommended a referral to psychiatrist, Dr. Rachel Fiori. (*Id.* at 1438).

Dr. Van Hoang conducted a consultative examination on October 19, 2017. Plaintiff reported chronic back pain radiating down her right leg with some numbness in the right foot; irritable bowel syndrome; generalized swelling; chronic pelvic pain; sharp chest pain reproduced by palpation of the chest wall; dyspnea after walking one block; chronic

11

depression; chronic anxiety; and, personality disorder. (*Id.* at 1493-98). She had a decreased range of motion in her lumbar spine (60/90 degrees of flexion), a positive straight leg raise test on the right, an antalgic gait, and decreased pulses on the left. Functionally, Plaintiff had great difficulty standing and walking without an assistive device and could hardly pick up a coin. Dr. Hoang concluded she would have severe physical limitations and could not walk without pain in her right leg and lower back. (*Id.* at 1497).

This evidence clearly calls into question Plaintiff's ability to sit the six hours per day sedentary work requires. SOCIAL SECURITY RULING (SSR) 83-10. As previously discussed, MRIs show disc extrusion and protrusion at the T7-8 level, disc herniation and an annular tear at the L3-4 level, facet hypertrophy from the L3 to the S1 level, disc protrusion at the L5-S1 level, and foraminal spurring. She also has a decreased and painful range of motion in her back, radiating pain down her legs, sensation deficits in her feet, muscle spasms, positive straight leg raise tests, bowel and bladder dysfunction, and difficulty with activities such as getting undressed. And, several physicians have opined that she cannot sit for a total of six hours per day. Accordingly, the ALJ's failure to account for this with at least a sit/stand/walk at will option in the RFC requires reversal.

On remand, the ALJ should also be directed to revisit the Plaintiff's combination of physical and mental impairments as the evidence suggests that her mental impairments, specifically her anxiety, affect her pain and vice versa. The record also indicates that the Plaintiff suffers from chronic edema in her lower extremities that might require her to elevate her legs. This, too, needs to be considered in the RFC. 20 C.F.R. §§ 404.1545(e), 416.945(e) (both severe and non-severe impairments must be accounted for in the RFC assessment).

## IV. CONCLUSION

Based on the foregoing, I recommend reversing and remanding this case to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

**The parties have fourteen (14) days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. We remind the parties that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 26th day of July 2019.

/s/ Mark E. Ford
HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE